# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-SA-00571-SCT

*MARY JANE HOOKS*

*v.*

*GEORGE COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/1998 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK H. WATTS |
| ATTORNEYS FOR APPELLEE: | SIDNEY AMON BARNETT |
| | DARRYL A. HURT, JR. |
| | GERALD ALAN DICKERSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 09/16/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/07/99 |

### BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

### SMITH, JUSTICE, FOR THE COURT:

¶1. This appeal comes to this Court following the granting of a private right of way, by the George County Board of Supervisors (hereinafter "the Board"), across the property of Mary Jane Hooks for the sole benefit of Doug Welford and wife, Juanita Welford, (the "Welfords") and the partial affirmance of that decision by the Chancery Court of George County. We, therefore, find that the chancellor was correct regarding the Welfords' standing to bring a petition before the Board of Supervisors. The Welford's should have offered proof that they had first sought to purchase the right of way from Hooks, prior to filing with the Board of Supervisors. To now require that the Welfords make a formal offer to purchase is rather impotent in view of the fact that our judicial system is now involved.

¶2. However, the Board failed to make a determination that the right of way was reasonably necessary in view of the fact that the Welfords had two other easements of access to their property. The chancellor erred regarding this issue and we reverse thereon.

## FACTS

¶3. On August 8, 1978, Casper and Ruby Mergenschroer, Hooks's parents, purchased forty acres from Sarah Miller, north of Basin Refuge road, described as the Northwest 1/4 of the Southeast 1/4 Section 36, Township 2 South, Range 7 West, in George County, Mississippi. Included in this conveyance was a right of way across Patricia Horn's property which allowed ingress and egress from the property to the road. The Mergenschroers then conveyed approximately three acres to their daughter, Hooks. On May 22, 1979, the Mergenschroers conveyed a perpetual easement or road right of way to Hooks and her former husband to allow for ingress and egress from Basin Refuge Road.

¶4. On August 22, 1997, Doug and Juanita Welford purchased a tract of land adjacent to the north side of Hooks's parents' property from Ruth Deakle along with a right of way to the property across Deakle's property. On August 23, 1997, the Welfords purchased from the Deakles a strip of land thirty feet by one thousand three hundred twenty feet.

¶5. This narrow strip is the very same land to which Hooks claims she was granted the previously mentioned easement. On September 4, 1997, Hooks returned home from work to find a new locked gate preventing her egress and ingress to her house. On September 5, 1997, Hooks was granted a temporary injunction to have the gate removed.

¶6. On October 31, 1997, George County Chancellor William H. Myers dissolved the injunction and granted leave for the parties to seek such relief for a private right of way before the George County Board of Supervisors. The Welfords filed their request for a private way on November 17, 1997, with the Board. On December 1, 1997, the Board ordered to approve a private way for Welford across the property of Hooks and to appraise the property for damages payable to Hooks. On December 5, 1997, Hooks filed a Bill of Exceptions with the Circuit Court of George County to appeal the Board's order.

¶7. Meanwhile, the Mergenschroers filed a petition for an injunction with the George County Chancery Court involving the same strip of land and gate against the Welfords, the Deakles, and another adjoining landowner, Robert E. Eubanks. The chancellor granted that petition for temporary injunction on November 6, 1997. On December 11, 1997, the Welfords filed a motion to contest jurisdiction and dissolve the injunction. On December 12, 1997, Chancellor Myers recused himself by order from the Mergenschroers's case.

¶8. Being made aware of the Mergenschroers' action in chancery court, on January 26, 1998, and finding that judicial economy would be best served by a transfer the Circuit Court of George County, *sua sponte*, tranferred the appeal of Hooks from the Board's order to the Chancery Court of George County. Chancellor Glenn Barlow considered the record and rendered an opinion on March 10, 1998, affirming in part and remanding one issue to the Board. Specifically, the chancellor reversed and remanded the case to the Board for a ruling consistent with the petition and request in that the private way should be equally shared between the Scotts and the Hooks.

¶9. Aggrieved, Hooks timely appealed on March 23, 1998, raising the following issues:

> **I. THE COURT ERRED IN AFFIRMING THE BOARD OF SUPERVISORS' ORDER WHERE THE WELFORDS FAILED TO MAKE THE REQUIRED SHOWING THAT THEY WERE UNABLE TO OBTAIN A REASONABLE RIGHT OF WAY FROM ALL THE SURROUNDING PROPERTY OWNERS.**

**II. THE COURT ERRED IN AFFIRMING THE ORDER OF THE BOARD OF SUPERVISORS WHERE THE WELFORDS FAILED TO ESTABLISH THAT THE PRIVATE WAY WAS REASONABLY NECESSARY FOR INGRESS AND EGRESS.**

## STANDARD OF REVIEW

¶10. The standard of review for this case is substantial evidence, the same standard which applies in appeals from decisions of administrative agencies and boards. ***Barnes v. Board of Supervisors,*** 553 So.2d 508, 511 (Miss.1989). "The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." ***[Board of Law Enforcement Officers Standards & Training v. Butler](#)***, 672 So.2d 1196, 1199 (Miss.1996). Substantial evidence has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion" or to put it simply, more than a "mere scintilla" of evidence. ***Johnson v. Ferguson***, 435 So.2d 1191, 1195 (Miss.1983).

¶11. In an appeal from the decision of a municipal authority, Miss. Code Ann. § 11-51-75 (1972) states that the person aggrieved may "embody the facts, judgment and decision in a bill of exceptions" which will be transmitted to the circuit court acting as an appellate court. Miss. Code Ann. § 11-51-75 (1972). The bill of exceptions serves as the record on appeal, and we have held that "[t]he circuit court can only consider the case as made by the bill of exceptions. This is the only record before the circuit court, as an appellate court." ***Stewart v. City of Pascagoula***, 206 So.2d 325, 328 (Miss.1968).

## LEGAL ANALYSIS

**I. THE COURT ERRED IN AFFIRMING THE BOARD OF SUPERVISORS' ORDER WHERE THE WELFORDS FAILED TO MAKE THE REQUIRED SHOWING THAT THEY WERE UNABLE TO OBTAIN A REASONABLE RIGHT OF WAY FROM ALL THE SURROUNDING PROPERTY OWNERS.**

¶12. Article 3, Section 14 of the Mississippi Constitution of 1890 provides that "(n)o person shall be deprived of life, liberty, or property except by due process of law."

¶13. Article 4, Section 110 of the Mississippi Constitution of 1890 provides as follows:

> The legislature may provide, by general law, for condemning rights of way for private roads, where necessary for ingress and egress by the party applying, on due compensation being first made to the owner of the property; but such rights of way shall not be provided for in incorporated cities and towns.

Pursuant to Section 110, the Legislature enacted Miss. Code Ann. § 65-7-201 (1991) which provides as follows:

> When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person

applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.

¶14. As early as 1905, this Court recognized that the proper manner for seeking a private way across neighboring land was by petitioning the county board of supervisors. *Wills v. Reid*, 86 Miss. 446, 453, 38 So. 793, 795 (1905). Under this statutory scheme for acquiring access, the plaintiff must compensate the landowner over whose land he is given a right of way by paying the landowner the fair value of any land taken and any damage that might accrue to the remainder of the landowner's property. *Alpaugh v. Moore*, 568 So.2d 291, 295 (Miss.1990); *Quinn v. Holly*, 244 Miss. 808, 812, 146 So.2d 357, 358 (1962). In addition, the plaintiff must pay for all the costs and expenses incurred in proceedings before the board of supervisors. *Broadhead v. Terpening*, 611 So.2d 949, 955 (Miss. 1992).

¶15. This Court has further addressed the requirements and procedures necessary for the granting of a private way on several occasions. This Court has consistently held that the right to control and use of one's property is a sacred right not to be lightly invaded or disturbed. *Whitefort v. Homochitto Lumber Co.*, 130 Miss. 14, 26, 93 So. 437, 439 (1922). In *Whitefort*, this Court held that one seeking to establish a private way of ingress and egress must bring his case within the statute by showing necessity and not mere convenience, and that he has been unable to acquire such right by contract, and that there is no other practical way that it may be acquired by contract or grant, and that he has no way over his own lands, in order that the board of supervisors may acquire jurisdiction. 130 Miss. at 25-26, 93 So. at 439.

¶16. Later, in *Rotenberry v. Renfro*, 214 So.2d 275 (Miss. 1968), this Court reaffirmed that before one may acquire a private roadway over the lands of another before the Board of Supervisors "the landlocked landowner must allege and show that he has been unable to obtain a reasonable right-of-way from all of the surrounding property owners." *Id.* at 278. Hooks asserts that the Welfords have failed to meet these requirements. Hooks contends that not only did their petition fail to contain allegations concerning the inability to obtain a right of way from the surrounding property owners, but they also failed to present any proof at the Board hearing that they had attempted to acquire by contract or purchase an easement or private roadway through Hooks's property.

¶17. To buttress her argument, Hooks offers the statement of chancellor who said as follows:

The Bill of Exceptions assigns as error, first, that the Board of Supervisors was without authority to act in that Mr. Welford failed to show that he contacted the adjoining landowners and was refused access and had no other way that what was given by the Board of Supervisors. This aspect is true in the real sense of the word since there has been no record to show that he had gone upon the property or contacted Mrs. Hooks and asked her straight out if she would sell him the land.

Thus, Hooks contends that the Welfords had no standing to request the Board to grant a private way through Hooks's property, and the chancellor committed reversible error in affirming the Board's order.

¶18. The Board responds that the petition offered by the Welfords alleged as follows:

The Petitioner would show that they have approached the said Respondents and have been denied a reasonable private way to reach their property and they have no recourse except as set forth in Section 65-7-201 of the Mississippi Code of 1972 and Section 110 of the Constitution of the State of Mississippi for the granting of a way to reach their property.

Based upon these allegations, the Board appointed a committee of two to view the property and make a

recommendation. The Board cites **Renfro** for the proposition that whether the petitioner made the requisite showing that negotiation for the property has proven fruitless is a question of fact for the Board to determine. 214 So.2d at 278.

¶19. The Board also refers this Court to the chancellor's opinion in which it is stated as follows:

> Although the exact words set forth in the statute were not used, nevertheless, the record clearly indicates that Mr. Welford through his efforts to go to court and to the Board of Supervisors demonstrates that he is unable to find passage. Therefore, the Court cannot say that the Board of Supervisors erred in regard to this element of proof. To say that Mr. Welford has not formerly or officially offered Mrs. Hooks money for the property would be futile in view of the ongoing dispute that has obviously continued for some time.

The Board ultimately determined, and the chancellor approved, that the Welfords should pay not only damages, but also the costs of a surveyor and an appraiser. The chancellor reversed the Board only on one issue-"the Board gave no reason for assessing the full thirty (30) feet against Mrs. Hooks." The chancellor reversed and remanded the case to the Board for a ruling consistent with the petition in that the private way should be equally shared between the Scotts and the Hooks.

¶20. For this Court to now require the Welfords to make a formal offer to purchase (as Hooks seems to suggest) would be imprudent and ignorant of the realities. The chancellor was correct in determining that the Welfords should not have to now make an offer to Hooks in order to have standing to bring a petition before the Board. However, it should be noted that the Welfords' tactics in attempting to find passage are not condoned. Rather than building a locked gate and starting a legal war, the prudent course of action would have been to approach Hooks first and discuss the problem. Regardless, it is now true that the judicial system is involved and the Board has made a ruling that is fair to both parties in regard to theWelfords' right to bring a petition. Thus, Hooks's contention of error is without merit.

### II. THE COURT ERRED IN AFFIRMING THE ORDER OF THE BOARD OF SUPERVISORS WHERE THE WELFORDS FAILED TO ESTABLISH THAT THE PRIVATE WAY WAS REASONABLY NECESSARY FOR INGRESS AND EGRESS.

¶21. In **Quinn v. Holly**, 244 Miss. 808, 146 So.2d 357 (1962), this Court stated as follows:

> We have concluded that the requirement . . . that the private road be "necessary for ingress and egress" only means that the same should be **reasonably necessary** and practical and not absolutely necessary; and that to construe the statute otherwise would defeat the wholesome purpose for which the same was enacted.

244 Miss. at 813, 146 So. 2d at 359. However, there must be a real necessity not just mere convenience at stake before private property can be taken. **Renfro**, 214 So.2d at 278; **Roberts v. Prassenos**, 219 Miss. 486, 69 So.2d 215 (1954). Hooks asserts that the Welfords have two other access routes to their property and that the private way across her property is not a necessity but a mere convenience.

¶22. Furthermore, Hooks offers **Alpaugh** in which this Court determined that the petitioners had met their burden of proof based on the fact that they were bound by water on three sides and the Alpaughs on the fourth. 568 So.2d at 294. There, this Court held that the burden of building a bridge over the water to access the property was unreasonable and the only reasonable access was across the Alpaughs' property.

*Id.* at 295. Hooks contends that here the facts are clearly distinguishable from *Alpaugh*.

¶23. Hooks asserts that the Welfords also purchased a fifty by thirty foot right of way on the south side of their property across the Deakles' property. It is inconvenient because it is wooded and not yet cleared. Hooks asserts that it would not be cost prohibitive to have this right of way cleared for the Welfords' access route.

¶24. Hooks also contends that the Welfords have additional access to their property from Sally Parker Road, a county maintained public road. It is approximately 3/4 of a mile to the north of the Welfords' property and is joined thereto by a gravel road traversing Scott Paper Company land. The Welfords alleged at the Board hearing that they had already acquired an easement or right of way from Scott Paper Company. Hooks, by counsel, argued at the hearing that the Welfords are not landlocked and can get to their property by the easement they bought from the Deakles. Hooks contends that the Board and the chancellor, on appeal, ignored these facts.

¶25. This Court agrees, because the Board did not make a finding of fact that the Welfords are in fact landlocked and in reasonable need of access across Hooks. Supervisor Larry Havard at the hearing stated as follows:

> I don't think we are going to benefit a thing in the world putting all the different things off. There is a lot of legal questions. You've got four different lawyers. You're going to have four different opinions. I think we've got a decision to make.

Obviously, the Board acted prematurely in granting the right of way to the Welfords in light of the unresolved issue of ownership of the original easement. Prudence would suggest that the Board should wait for a determination from the chancery court involving all the claims over exactly who owns which easement. The hearing transcripts reveal that Board was aware of all the unresolved legal issues and acted anyway.

¶26. The Board does not refute Hooks's claims. Rather, the Board stresses the standard of review and the discretion to be afforded the chancellor. However, the Board does recognize that the chancery court record is "very busy" and that most of those proceedings are "not within its province."

¶27. It seems from the record that the Board was acting in manner to determine at least in some part the outcome of the legal issues of the parties rather than simply determining whether a private way was in fact a reasonable necessity. Hooks presented evidence to the Board that the Welfords had two alternative rights of way to their property. The Board did not even respond. A finding of fact in this regard is mandatory when determining whether the Welfords met their burden of proof, especially where the Welfords did not provide any evidence to the Board that the right of way across Hooks's property is any more reasonable than the other two easements the Welfords already have. *Renfro*, 214 So.2d at 278 (petitioner has burden of proof to show right of way is "reasonably necessary"); *accord* *Alpaugh*, 568 So.2d at 295. Regardless, there are unresolved issues in the other case currently pending (the Mergenschroers' case) before the chancery court that are relevant to a determination of whether a right of way for the Welfords across Hooks's property is a reasonable necessity.

¶28. Therefore, the order of the Board is arbitrary and capricious and violative of the statutory and constitutional rights of Hooks. The Welfords have not met their burden of proof and have not complied with Section 65-7-201 by showing the Board that they are in reasonable need of a right of way across Hooks.

The Board must wait on the chancery court to make a ruling on the status of the easements and rights of way in dispute before it can determine whether the right of way across Hooks is "reasonably necessary."

## CONCLUSION

¶29. Although the Welfords' tactics are not condoned, the chancellor was correct in determining that the Welfords should not have to now make an offer to Hooks in order to have standing to bring a petition before the Board. Rather than building a locked gate and starting a legal war, the prudent course of action would have been to approach Hooks first and discuss the problem. Regardless, it is now true that the judicial system is involved, and the Board has made a ruling that is fair in regard to the Welfords' standing to bring a petition.

¶30. However, the George County Board of Supervisors has acted in an arbitrary and capricious manner by granting the Welfords' petition for a right of way across Hooks's property. The Board failed to make a determination that the right of way was in fact "reasonably necessary" in light of the Welfords allegedly having two other easements of access. The Board should not rule on the petition until the status of the easements is determined in chancery court, because the status of the easements will have a direct bearing on the reasonable necessity of a private way. Hence, the judgment of the George County Chancery Court is reversed and remanded for proceedings consistent with this opinion.

¶31. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR.**