910 So.2d 682 (2005)
Jerry M. GILBREATH, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Julie S. Carlisle, Appellees.
No. 2003-CC-00859-COA.
Court of Appeals of Mississippi.
March 8, 2005.
*684 Jerry M. Gilbreath, Appellant, pro se.
Julie S. Carlisle, Appellee, pro se.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. This is an appeal by the employer, Jerry M. Gilbreath, of a decision of the Circuit Court of Jones County, Mississippi reversing the Mississippi Employment Security Commission (MESC) Board of Review's denial of unemployment compensation to his former employee, Julie S. Carlisle, and finding Carlisle entitled to unemployment benefits. We find that the MESC order disqualifying Carlisle from receiving unemployment benefits was not based on substantial evidence and was, therefore, arbitrary and capricious. Therefore, we affirm the order of the circuit court reversing the decision of the MESC Board of Review. Rather than deciding Carlisle's entitlement to benefits; however, the circuit court, as a court of appeal, should have remanded this cause to the MESC for further proceedings. Consequently, we affirm the decision of the circuit court in part, reverse in part, and remand to the MESC for further proceedings.

STATEMENT OF FACTS, COURSE OF PROCEEDINGS AND DISPOSITION BELOW
¶ 2. Julie S. Carlisle was employed by attorney Jerry Gilbreath as a secretary for over nine years. Carlisle's employment came to an end on May 17, 2002; there is a dispute between the parties as to the circumstances which led to Carlisle's separation from employment. Carlisle contends that she was terminated by Gilbreath, while Gilbreath counters that Carlisle voluntarily quit.
¶ 3. An employment interviewer with the Mississippi Employment Security Commission took statements from both Gilbreath and Carlisle. Gilbreath reported that Carlisle quit "because she was going to relocate to [A]labama with her brother." Carlisle "denie[d] quitting to relocate to [A]labama with her brother, and stated she had never discussed anything like that with [Gilbreath.]." Instead, Carlisle stated that Gilbreath discharged her for no reason, although she intimated that he was emotionally unstable due to a recent stroke. Based upon these interviews, the claims examiner determined that Carlisle had quit her job which disqualified her from receiving unemployment benefits.
¶ 4. Carlisle appealed this decision of the claims examiner and was granted a hearing before an appeals referee on July 9, 2002. Gilbreath did not attend the hearing. Carlisle testified unequivocally that she did not quit her job. She testified that an emotional Gilbreath called her into his office at five o'clock on Friday afternoon and informed her "it's time we part our ways." The only reason he gave was that the cash flow was not there, which Carlisle confirmed was due to Gilbreath's inability to work following a stroke the previous December. Although Carlisle indicated she would like to add a "few comments" to the record, the referee stated, "If you didn't quit your job, I don't need any other information." The appeals referee subsequently found that Carlisle was terminated from her job and entitled to unemployment benefits.
¶ 5. Gilbreath immediately requested a rehearing, claiming that due to his ill health and his paralegal's being on vacation the week of the July 1-5, the mail was not picked up until Tuesday, July 9th, approximately an hour and a half after the hearing began. Despite Carlisle's argument *685 that it was not her fault that Gilbreath did not pick up his mail on Monday, July 8,[1] the Board of Review remanded the cause to the appeals referee for the employer's testimony and any additional testimony from the claimant.
¶ 6. After several rescheduling notices, the hearing was held on September 12, 2002. Only Gilbreath and his two witnesses were present at the hearing. Gilbreath testified that Carlisle voluntarily terminated her employment; his version of the reasons for her quitting was, however, somewhat different from the account he originally reported to the employment interviewer. At the hearing, Gilbreath testified that Carlisle told him that she was going to Gulf Shores, Alabama to be with her brother the first week in June to celebrate her birthday and was getting married on July 27. Gilbreath further testified that he requested Carlisle not to leave him "high and dry," and, while she originally agreed to work for two additional weeks, she later changed her mind and never returned to work.
¶ 7. Gilbreath also offered into evidence a tape recording left by Carlisle on the answering machine of Marilyn Johnson, Gilbreath's paralegal, on the morning of May 17 in which Carlisle stated that she "can't take anymore" and was "most likely going to quit today." Johnson authenticated the tape recording and testified that although Carlisle had previously mentioned quitting, she had never followed through. Lampkin Butts, an attorney who apparently shared office space with Gilbreath, testified that Carlisle told him on May 16 that she was going to quit "because they'd had a fuss or something." He also confirmed that Carlisle had talked about quitting on previous occasions.
¶ 8. The entire file relative to Carlisle's claim was returned to the Board of Review which, on October 25, 2002, found that Carlisle voluntarily left her employment with Gilbreath "indicating that the reason for her leaving was to relocate to another locality." The Board of Review, therefore, reversed the decision of the appeals referee and found Carlisle disqualified for benefits. Carlisle was sent a notice of overpayment in which she was requested to make immediate restitution of the unemployment benefits she had been paid.
¶ 9. Carlisle moved to set the decision of the Board of Review aside, claiming that she was never notified of the hearing scheduled for September 12, 2002, and also filed a notice of appeal. Apparently in response to the circuit court's request for her assignment of error, Carlisle filed a document more fully outlining her version of events and annotating various documents in the file with her comments or concerns. Among the matters Carlisle called to the circuit court's attention was lack of support for the Board of Review's finding that she had left her employment "to relocate to another locality."[2]
¶ 10. By order entered March 6, 2003, the Circuit Court of Jones County, Mississippi, reversed the decision of the MESC Board of Review, finding the decision "not supported by the evidence," and reinstated Carlisle's unemployment benefits. The court determined that Carlisle "was discharged on or about May 17, 2002 and ... the testimony and evidence before the Mississippi *686 Employment Security Commission taken on Tuesday July 9, 2002 indicates and shows that the Claimant, Julie Carlisle, met the burden of proof and is entitled to the benefits of the Mississippi Employment Security Commission." The court made no reference to the evidence presented at the September 12, 2002, hearing.
¶ 11. Gilbreath filed a motion to reconsider which was denied on March 20, 2002. Thereafter, on April 16, 2002, he filed a motion to reconsider and for recusal in which he requested an opportunity to be heard on his original motion to reconsider and suggested that "by reason of the close personal friendship of Jerry Gilbreath with the judge, and of the close personal friendship of the Court's law clerk ... with the plaintiff," the trial judge should recuse himself from the cause. Two days later, Gilbreath filed a notice of appeal from the March 6, 2003, order and the March 20, 2002, denial of his motion to reconsider.

ISSUES ON APPEAL
¶ 12. On appeal, Gilbreath raises the following issues which we quote verbatim:
1. Whether Julie S. Carlisle met her burden of proof as to her alleged termination by Jerry M. Gilbreath.
2. Whether or not the Circuit Judge abused his discretion in summarily denying a full hearing to the parties prior to his reversal of the decision of the Mississippi Employment Security Commission.
3. Whether or not the Circuit Judge was in error in his denial of Jerry M. Gilbreath's Motion for Reconsideration and Recusal.
4. The overwhelming weight of credible evidence in the record demonstrates a voluntary separation from employment by Julie S. Carlisle, requiring reversal of the Order of the Circuit Court and affirmance of the decision of the Mississippi Employment Security Commission.

STANDARD OF REVIEW
¶ 13. The appropriate standard of appellate review of a Board of Review's decision is set forth in section 71-5-531 of the Mississippi Code and explained by Allen v. Miss. Employment Sec. Comm'n, 639 So.2d 904, 906 (Miss.1994). The statute provides, "in any judicial proceeding under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Miss.Code Ann. § 71-5-531 (Rev.2000). The court in Allen stated:
This court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights.
Allen, 639 So.2d at 906. "Substantial evidence" is that which is relevant and capable of supporting a reasonable conclusion, or "more than a mere scintilla of evidence." Hooks v. George County, Mississippi, 748 So.2d 678, 680(¶ 10) (Miss.1999). Substantial evidence has been further defined by the Mississippi Supreme Court to be "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Public Employees' Retirement System v. Marquez, 774 So.2d 421, 425(¶ 13) (Miss.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 768 (Miss.1991)). A decision not based on substantial evidence is "arbitrary and capricious." Marquez, 774 So.2d at 429(¶ 33).

*687 ANALYSIS
WHETHER THE CIRCUIT COURT PROPERLY REVERSED THE MESC BOARD OF REVIEW'S DECISION DISQUALIFYING CARLISLE FROM RECEIVING UNEMPLOYMENT BENEFITS
¶ 14. Gilbreath's first, second and fourth issues all concern the sufficiency of the evidence supporting the Board of Review's decision to disqualify Carlisle from receiving unemployment benefits and the propriety of the circuit court's reversing that decision; accordingly, we will address these issues simultaneously.[3] The reason for Julie Carlisle's separation from employment is in dispute. Carlisle claims she was discharged, while her employer Jerry Gilbreath claims Carlisle voluntarily left. This distinction is important in that it determines which party has the burden of proof. Section 71-5-513 of the Mississippi Code states that "the burden of proof of good cause for leaving work shall be on the claimant, and the burden of proof of misconduct shall be on the employer." Miss. Code Ann. § 71-5-513 A(1)(c) (Rev.2000). If Carlisle voluntarily left employment with Gilbreath, she would be required to prove it was for good cause. If Carlisle was fired, Gilbreath would be required to show that the discharge was a result of Carlisle's misconduct.
¶ 15. Although appellate courts apply a deferential and limited standard of review to factual findings of the MESC Board of Review, if the board "offer[s] an explanation for its decision that runs counter to the evidence before [it]," the board's action is arbitrary or capricious. See Citizens Ass'n for Responsible Development, Inc. v. Conrad Yelvington Distributors, Inc., 859 So.2d 361, 365(¶ 7) (Miss.2003) (quoting Miss. Dep't of Envtl. Quality v. Weems, 653 So.2d 266, 281 (Miss.1995)).
¶ 16. The Board of Review found that Julie Carlisle voluntarily left her employment with Gilbreath on May 17, 2002 to relocate to another locality. The record before the MESC does not support this finding. The only mention of any possible relocation by Carlisle is in the initial report of the employment interviewer who records that Gilbreath stated that Carlisle quit "because she was going to relocate to [A]labama with her brother." Carlisle, however, denied this contention. When Gilbreath testified before the appeals referee, he made no reference to any relocation by Carlisle, and his only mention of Alabama was that Carlisle planned to spend a week's vacation with her brother in June. Whether Gilbreath altered his account of Carlisle's separation, or whether the employment interviewer misinterpreted his original account, we do not know. However, the Board of Review's reliance upon this discredited statement to support its finding that Carlisle voluntarily left her employment is arbitrary or capricious. Accordingly, the circuit court was correct in its decision to reverse the decision of the Board of Review.
¶ 17. The circuit court was incorrect, however, in deciding the disputed issue of fact as to whether Carlisle voluntarily left her employment or was terminated. By statute, the MESC is the finder of fact, and the jurisdiction of the appellate court is "confined to questions of law." Miss.Code Ann. § 71-5-531 (Rev.2000). This is not a case where the facts are undisputed and the issue before the reviewing court is whether those facts constitute misconduct as a matter of law. (See, e.g., Allen v. Miss. Employment Sec. Comm'n, 639 So.2d 904, 906-07 (Miss. *688 1994)). In this case, the central factual issue-whether Carlisle voluntarily left her employment or was terminated must be decided. Although the Board of Review's original finding was not based upon substantial evidence, we believe that further factual determination is within the province of the Board of Review rather than the circuit court sitting as a court of appeal.[4] Accordingly, we reverse the circuit court's determination that Carlisle is entitled to unemployment benefits and remand to the MESC Board of Review for further proceedings.
¶ 18. On remand, we direct the Board of Review to reopen the record and provide both the parties the opportunity to present evidence or cross-examine the other party and his/her witnesses. Our reasons are two-fold. First, it would be arbitrary to deny Carlisle the opportunity to rebut the evidence Gilbreath placed into the record on September 12, 2002. Carlisle contends that she did not receive notice of the September 12, 2002 hearing before the appeals referee. We are aware of the presumption of delivery which attaches to the proof of proper posting of first class mail (see Holt v. Miss. Employment Sec. Comm'n, 724 So.2d 466, 470 (¶¶ 19-26) (Miss.Ct.App.1998)); however, under the unique circumstances of this case, it would be arbitrary for the Board of Review to rely upon the presumption to deny Carlisle the opportunity to present evidence on remand when the Board granted Gilbreath's request to reopen the record when his only excuse for non-attendance at the first hearing was that he failed to pick up his mail from the post office. If the presumption of delivery were to apply, it would apply equally to Carlisle and Gilbreath. Second, based upon the current record, it is obvious to this Court that the full account of the events which led to Carlisle's separation from employment has not yet been told, probably due to the disjointed way in which the record was developed and the referee's refusal to allow Carlisle to add her "few comments" on the record.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY IS AFFIRMED IN PART, AND REVERSED IN PART, AND THE CASE IS REMANDED TO THE MESC BOARD OF REVIEW FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] Carlisle's correspondence to the Board of Review stated that while she "was very unhappy with [her] job" due to "putting up with abuse & foul language for 10 years," she "would not quit a 10 yr. job, being a single parent, without having another job to go to."
[2] Carlisle underlined the finding, added a question mark and the notation "never heard anything about this!"
[3] Any issue not addressed in this opinion is moot.
[4] While section 71-5-531 provides that the Board of Review's findings of fact are "conclusive"if supported by substantial evidence, the statute does not state what the course of proceedings should be in the event the appellate court determines the findings of fact are not based on substantial evidence. In Williams v. Miss. Employment Sec. Comm'n, 395 So.2d 964 (Miss.1981) the Mississippi Supreme Court determined that the uncorroborated hearsay evidence relied upon by the MESC in denying unemployment compensation did not constitute "substantial evidence." Rather than determining the resultant factual issue itself, however, the court remanded the case for further proceedings consistent with the opinion. Id. at 966. We believe this to be the appropriate procedure in the case at bar.