962 So.2d 684 (2007)
GREENWOOD PUBLIC SCHOOL DISTRICT, Appellant
v.
MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY, Appellee.
No. 2006-CC-00212-COA.
Court of Appeals of Mississippi.
February 27, 2007.
Rehearing Denied June 12, 2007.
*685 Richard A. Oakes, Greenwood, attorney for appellant.
Albert Bozeman White, Madison, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. The Greenwood Public School District (District) seeks review of the judgment of the Circuit Court of Leflore County affirming the decision of the Mississippi Department of Employment Security (MDES). MDES found that the District had failed to prove that a claimant had voluntarily resigned or had been discharged for misconduct, thereby affirming an award of unemployment benefits to the claimant. Finding that the Commission's order is supported by substantial evidence, we affirm.

STATEMENT OF THE CASE
¶ 2. Rodney Major was employed as a physical education teacher and head basketball coach by the District from 2001 until 2005. Major taught under a one-year renewable contract. Nearing the end of the 2005 school year, Major was approached by the principal and informed that his contract would not be renewed for the 2005-06 school year. The District decided not to renew Major's contract because it was unsatisfied with the direction of the basketball program and the lack of student participation in the physical education program. At this time, the principal gave Major the option of resigning or being terminated and encouraged Major to resign, advising him that resignation would afford him better future employment opportunities. Major chose to finish the remainder of the 2004-05 school year, and *686 resigned prior to the beginning of the 2005-06 school year. He subsequently filed for unemployment benefits. Major was awarded unemployment benefits and the District appealed, asserting first that Major voluntarily quit or, in the alternative, that Major was discharged due to misconduct and was not entitled to benefits. Following a telephonic hearing, the administrative appeals officer (AAO) affirmed the decision to award unemployment benefits. The District continued its appeal, however, the Board of Review affirmed the award of unemployment benefits, adopting findings of fact made by the AAO, and that decision was affirmed by the Leflore County Circuit Court. The District now appeals to this Court, seeking review of the decision of the lower court, urging us to find that Major voluntarily discontinued his employment and that he is unavailable for work, so that he is not entitled to unemployment benefits.

STANDARD OF REVIEW
¶ 3. We find our standard for reviewing the findings and decisions of the MDES in Mississippi Code Annotated section 71-5-531 (Supp.2006): "In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." "[W]here there is the required substantial evidence, [appellate courts have] no authority to reverse the circuit court's affirmance of the decision of the Board of Review." Richardson v. Miss. Employment Sec. Comm'n, 593 So.2d 31, 34 (Miss.1992). We must not review the facts and assign our own weight to them, but rather we defer to the judgment of the agency. Broome v. Miss. Employment Sec. Comm'n, 921 So.2d 334, 337(¶ 12) (Miss.2006).

LEGAL ANALYSIS
¶ 4. Mississippi unemployment compensation law provides that one who voluntarily resigns without good cause from employment forgoes his or her eligibility to receive unemployment compensation. Miss.Code Ann. § 71-5-513(A)(1)(a) (Supp. 2006). However, if a situation arises where the former employee can establish that he or she left the employment based upon good cause, under a reasonable belief that he or she has been fired, the Mississippi Supreme Court has held that this is not classified as "voluntary termination" of employment within the meaning of the statute. Huckabee v. Miss. Employment Sec. Comm'n, 735 So.2d 390, 397(¶ 25) (Miss.1999).
¶ 5. The AAO found, and the Board of Review as well as the Circuit Court summarily affirmed, that the District initiated the separation of employment and that the District failed to show that the discharge was a result of Major's misconduct. The District argues that the lower court erred in awarding Major unemployment benefits and asserts two positions in support of its argument. First, the District argues that Major voluntarily ceased his employment with the District, thereby precluding him from drawing unemployment benefits. Second, the District argues that even if we find that Major was discharged, the discharge was based on Major's misconduct, thereby eliminating his eligibility to receive unemployment benefits. MDES argues that because Major resigned in lieu of being discharged for unsatisfactory job performance, he, therefore, did not quit his employment, nor was he discharged for misconduct. MDES asserts that because Major was discharged within the meaning of Mississippi Employment Security Law, Major is eligible to receive unemployment benefits.
*687 ¶ 6. Our supreme court has dealt with a similar issue in the opinion of Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist., 437 So.2d 388, 399 (Miss.1983). In that case, the court discussed the issue of a teacher's contract not being renewed and the implications of the non-renewal as effecting eligibility for unemployment compensation benefits. The court stated:
An employee is as effectively removed from employment, whether he is fired or at the end of his contract term not rehired. We hold that a school teacher has been "discharged" within the meaning and contemplation of the Mississippi Employment Security Law whenever, within the meaning and contemplation of the Mississippi School Employment Procedures Law, he or she has been either fired or simply not reemployed. If the school district can demonstrate that the teacher's non-reemployment was because of misconduct connected with his or her work, the teacher is ineligible for benefits. . . .
Id. Following the lead of our supreme court in Huckabee and Philadelphia Mun. Separate Sch. Dist., we find that Major was "discharged" within the meaning of the statute.
¶ 7. As a consequence of our finding that Major was discharged, we must now determine whether the lower court erred in holding that his discharge was not based on misconduct. The term "misconduct" has been defined by our unemployment benefit case law as "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). "Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered `misconduct' within the meaning of the statute." Id.
¶ 8. At the hearing before the AAO, a representative of the District testified that Major's contract was not renewed based upon dissatisfaction with the direction of the basketball program and with the overall handling of the physical education program. The AAO found that these cited reasons for the non-renewal of Major's contract did not amount to the requisite misconduct necessary to preclude unemployment benefits. At most, the District viewed Major's job performance unsatisfactory so as to justify their non-renewal. An employer's dissatisfaction with an employee's job performance does not amount to a showing of misconduct so as to disqualify the employee from receiving unemployment benefits. Our review of the record concludes that the AAO, and subsequently the Board of Review and the circuit court had substantial evidence before them to find that Major's discharge was not due to his misconduct. These findings are supported by substantial evidence and therefore it would be error for this Court to disturb such findings.
¶ 9. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER AND ISHEE, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, BARNES AND CARLTON, JJ.
*688 ROBERTS, J., Dissenting:
¶ 10. After examining the record of the case sub judice, I cannot agree with the majority that the Commission's order is supported by substantial evidence. As such, I must respectfully dissent.
¶ 11. The central issue in the instant case is whether Major voluntarily resigned or if he was somehow discharged from his positions as physical education teacher and basketball coach. This determination is vital as it determines who carries the burden of proof during a hearing to determine unemployment benefits eligibility. Miss. Code Ann. § 71-5-513 A(1)(c) (Supp.2006). The category of separation, be it a voluntary quit or discharge, is a question of fact for the Mississippi Employment Security Commission to determine. Lafoe v. Mississippi Employment Sec. Comm'n, 909 So.2d 115(¶ 5) (Miss.Ct.App.2005). However, a reviewing court is not bound by such a finding if it is not supported by substantial evidence. Gilbreath v. Mississippi Employment Sec. Comm'n, 910 So.2d 682(¶ 13) (Miss.Ct.App.2005); Miss. Code Ann. § 71-5-531 (Supp.2006). "Substantial evidence" has been defined as evidence able to support a reasonable conclusion and evidence "reasonable minds might accept as adequate to support a conclusion." Gilbreath, 910 So.2d at (¶ 13).
¶ 12. The Administrative Appeals Officer's, findings of fact state that the employer, Greenwood School District, "decided to non-renew the claimant's contract based upon performance issues" and that Major "was given the opportunity to resign in lieu of discharge." Based on these and other findings of fact, the AAO stated that "[t]he facts in this case show the claimant resigned in lieu of being discharged" and it was his opinion "that the employer initiated separation from employment." A review of applicable school law and precedent cited by the majority shows that the findings of the AAO are not supported by substantial evidence.
¶ 13. No later than April 1, the principal of each school is required to recommend to the superintendent of the local school district those teachers to be employed by the school. Miss.Code Ann. § 37-9-17(1) (Supp.2006). If a school district decides not to recommend an employee receive a contract for a successive year "written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given." Miss.Code Ann. § 37-9-105 (Supp.2006) (emphasis added). Once an employee receives a notice of proposed nonreemployment, he or she has ten days to request a hearing before the school board to challenge those reasons stated by the school district for his or her nonreemployment. Miss.Code Ann. § 37-9-109 (Rev.2001). Any employee aggrieved by the decision of the school board may appeal to chancery court and, if at odds with the decision of the chancery court, may further appeal to the supreme court. Miss.Code Ann. § 37-9-113 (Rev.2001). The majority cites Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist., 437 So.2d 388 (Miss.1983), for the proposition that a teacher has been "discharged" for purposes of determination of eligibility for unemployment benefits when he or she has been fired or not reemployed. Specifically, the supreme court stated,
An employee is as effectively removed from employment, whether he is fired or at the end of his contract term not rehired. We hold that a school teacher has been "discharged" within the meaning and contemplation of the Mississippi Employment Security Law whenever, within the meaning and contemplation of the Mississippi School Employment Procedures *689 Law, he or she has been either fired or simply not reemployed.
Id. at 399.
¶ 14. While I have no qualms with the above definition of "discharged," I argue that the circumstances of Major's separation from his employment with the Greenwood School District do not fall under that definition. The main issue in Philadelphia Mun. Separate Sch. Dist. was whether the findings of one administrative agency, the Philadelphia Municipal Separate School District, could be binding on another agency, the Mississippi Employment Security Commission, during proceedings concerning similar fact questions. Id. at 390. Upon deciding that issue, the supreme court rejected the contention of the MESC that if a teacher is non-reemployed for cause that teacher is still entitled to unemployment benefits and defined "discharge" as quoted above. Id. at 398-99. The facts of the claimant's discharge in Philadelphia Mun. Separate Sch. Dist. are easily, and rightfully, distinguished from the case at hand. Bobby Edsel Winstead, the claimant, was a math teacher with the Philadelphia Municipal Separate School District and after approximately nine years with the District he was officially notified that he was not going to be recommended for reemployment. Id. at 392, n. 1. Winstead was given a hearing before the Board of Trustees of the District and the Board decided that the recommendation of nonreemployment would be sustained. Id. At this point Winstead filed his initial claim for unemployment benefits and separately appealed the decision of the Board of Trustees. Id.
¶ 15. The obvious difference in the case sub judice and Philadelphia Mun. Separate Sch. Dist. is that the procedures for non-reemployment were never initiated against Major, while Winstead was given his notice, initial trial and appeal to the chancery court. The Philadelphia Mun. Separate Sch. Dist. court conditioned the definition of "discharge" upon the claimant being fired or not reemployed "within the meaning and contemplation of the Mississippi School Employment Procedures Law." Id. at 399. The record of the instant case shows that Major resigned from his positions before receiving any official notice that he was not going to be recommended for reemployment. While George Noflin, the principal of Greenwood High School, did testify during a telephone hearing with the AAO that he and Major discussed the recommendation for non-renewal, Noflin stated that he did not force him to resign, but only advised him that a resignation would look more appealing to future employers than a non-renewal. Major's own testimony corroborates this. When asked if he turned in resignation letters for his positions as basketball coach and physical education teacher he stated, "yes I did resign." Furthermore, when asked if Noflin ever indicated that if Major did not resign he would be recommended for non-renewal, Major responded that Noflin never said that to him. Finally, on Major's March 22, 2005 resignation letter he listed as his reason for resigning his position as the physical education teacher that he was going to "explore employment opportunities." He did not list as his reason for resignation being threatened with non-renewal, that the school wanted to go in a different direction with the basketball program or any other reason indicating discharge.
¶ 16. It is clear from the record that Major's separation from Greenwood High School does not fit within the supreme court's definition of "discharge" as Major was neither fired nor not reemployed. It is equally clear from the record that Major decided to resign based on the possibility of non-reemployment in an effort to protect *690 his work record had the recommendation for non-reemployment, once officially expressed, been sustained and upheld on appeal. Therefore, I contend that the decision of the of the Board of Review, and subsequent affirmance by the Leflore County Circuit Court, should be reversed as it is not supported by substantial evidence. Furthermore, the majority's opinion has substantial ramifications to the integrity of the teaching profession in this state. Noflin indicated that a non-renewal on an educator's work history is something that stays with him throughout his career. Noflin testified that to his knowledge most school districts in Mississippi ask as part of their employment application whether the teacher/applicant has ever received a non-renewal. Additionally, Noflin testified that if he was presented with an applicant who had been non-renewed he would most likely choose someone else without a non-renewal. Hence, protecting a teacher's work record from receiving a non-renewal is paramount to his future employment. The majority's opinion would allow teachers to receive a hint of non-renewal, or even the actual notice of a proposed non-renewal, and simply resign, thereby shielding their work record from a permanent potential indication of substandard performance and receive unemployment benefits when the reason they resigned was not because of a potential non-renewal, but the effect a non-renewal would have on their future employment. While an employee is entitled to unemployment benefits if he or she leaves employment for good cause, resigning in a effort to preserve a soon-to-be tarnished professional name can hardly qualify as such.
¶ 17. Additionally, while Noflin testified that Major would have still been recommended for non-renewal had his teaching license been renewed, he also testified that Major had been warned of his license's pending expiration. Major, along with roughly thirty other teachers, had been selected for non-reemployment as a result of the expected expiration of their licenses before the next school year began. In October 2004, the first written notice that his teaching certificate had to be renewed by April 12, 2005 was sent to Majors. Majors did not get his license renewed. A second letter was mailed to Majors in January 2005 that he must get his renewal by the board meeting on April 12, 2005 or he could not be offered a re-employment contract for the 2005-2006 school year. Mississippi Code Annotated section 37-9-7 (Supp.2006) states that it is unlawful for a teacher to be employed or contracted to teach in any public schools of this state if they do not hold a current and proper license. Miss.Code Ann. § 37-9-7. The day of the hearing before the AAO, August 8, 2005, Major had yet to renew his license. Therefore, had Major not resigned it would have been unlawful for the District to extend his employment. In Richardson v. Mississippi Employment Sec. Comm'n, 593 So.2d 31 (Miss.1992), the supreme court upheld a decision by the Employment Security Commission's Board of Review labeling an employee's failure to maintain a driver's license, which was a condition of his employment, as misconduct. Richardson, 593 So.2d at 35. Similarly, if Major had not submitted his letters of resignation he would have been nonrenewed as a result of his failure to maintain his teaching license and disqualified from receiving unemployment benefits as, in line with Richardson, Major's inaction would have been deemed misconduct. Obvious to me is the conclusion that Majors knew when he submitted his last letter of resignation on March 22, 2005 that if he did not have his license renewed within the next three weeks, by April 12, 2005, the school board would send him written notification of non-renewal because it was *691 illegal for it to contract with an unlicensed teacher. Therefore, for the reasons stated above, I dissent.
GRIFFIS, BARNES AND CARLTON, JJ., JOIN THIS OPINION.