BARNES, J.,
for the Court:
¶ 1. Zelma Johnson, appearing pro se, appeals the decision of the Circuit Court of Washington County, which affirmed the decision of the Board of Review (Board) of the Mississippi Department of Employment Security (MDES) denying her unemployment benefits. Finding there was not substantial evidence to support the Board’s decision, we reverse and remand to the MDES for a computation of unemployment benefits.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Johnson had been employed with Washington County Opportunities Inc. (Employer), which operates a “Head Start” program for low-income parents of preschool children in Greenville, Mississippi. She had been employed for thirty-eight years as a family-service worker, until she was discharged on September 27, 2012, for insubordination. The Employer claims Johnson repeatedly refused to follow a direct work-related order to perform a job duty.
¶ 3. After discharge, Johnson filed for unemployment benefits. An MDES claims examiner investigated the facts surrounding the discharge, interviewing Johnson and Gracie Williams, the Employer’s human resource director. Williams stated Johnson was discharged because Johnson was asked several times to relocate a special-needs child from a three-year-old class to a four-year-old class and failed to do so.
¶4. The date of the incident at issue was on or around September 14, 2012. Johnson stated the special-needs child transferred from another center, and the child’s transfer slip incorrectly had the child’s age as three years old. Checking the birth certificate, Johnson found the child was actually four years old. Johnson claimed she was asked by her supervisor, Lena Berry, to relocate the child to her four-year-old .class, but Johnson told Berry her four-year-old class was already full with the maximum capacity of twenty children.[1] Berry then told her to place the child in a classroom. Johnson stated that she needed the other workers’ permission to place a child in their classroom, and asked Berry in which classroom to place the child. Berry did not respond; so Johnson asked her coworkers who did not have full classrooms if they would take the child. Johnny Smith, whose classrooms were not full, offered to take the child, but then changed his mind after speaking with a coworker. He in turn gave the child’s information folder to another coworker, Glenda Nelson, and asked if she could take the child, but she declined as her classrooms were full. Johnson maintained that once she passed the child to another caseworker who had space in his classroom to take the child, the matter was out of her hands, and she had done as she was told to do.
¶ 5. On September 20, 2012, Berry sent a memo via email to Terry Jones, Executive Director of the Employer, stating Johnson did not follow Berry’s order to *152 place the child in the correct classroom for her age, and instead put her in “family-service,” and “the child is just sitting in her stroller.” Berry complained that “no one in family service has placed this child” and that “this situation is out of control.”
¶ 6. On September 21, 2012, Johnson received a fax from Jones stating Johnson was suspended with pay for not placing the child in a classroom. Memos by coworkers over the incident were • written and later entered into evidence.[2] Evidence showed Johnson was also given a previous verbal warning in February 2012 for being rude to a parent, but the parent denied it. Evidence also showed that over her thirty-eight years of employment, all of Johnson’s evaluations had been either “very good” or “good.”
¶ 7. Based on the investigation, the claims examiner determined that Johnson’s discharge for insubordination constituted disqualifying conduct for unemployment benefits. Johnson appealed, and a telephonic hearing was held with an MDES administrative law judge (ALJ), Johnson, and Williams. The ALJ affirmed the claims examiner’s decision, finding that Johnson was discharged for insubordination and misconduct for not following directions to place a child in the correct age-group classroom. Johnson then appealed to the Board, which also affirmed, adopting the ALJ’s decision.. Johnson next appealed to the Washington County Circuit Court, which affirmed the Board’s decision. Johnson now appeals to this Court.
STANDARD OF REVIEW
¶ 8. This Court’s standard of review for administrative appeals is well established. If the Board’s findings of fact are supported by substantial evidence and absent of fraud, they are conclusive. Miss.Code Ann. § 71-5-531 (Rev. 2011). An administrative agency’s conclusions will remain undisturbed unless the agency’s order is: (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope or power granted to the agency, or (4) in violation of the employee’s statutory or constitutional rights. Miss. Dep’t of Emp’t Sec. v. Good Samaritan Pers. Servs., 996 So.2d 809, 812 (¶ 6) (Miss.Ct. App.2008) (citing Miss. Comm’n on Envtl. Quality v. Chickasaw Cnty. Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)). “ ‘Substantial evidence’ is that which is relevant and capable of supporting a reasonable conclusion, or ‘more than a mere scintilla of evidence.’ ” Gilbreath v. Miss. Emp’t Sec. Comm’n, 910 So.2d 682, 686 (¶ 13) (Miss.Ct.App.2005) (quoting Hooks v. George Cnty., 748 So.2d 678, 680 (¶ 10) (Miss.1999)).
ANALYSIS
¶ 9. The gist of Johnson’s pro se argument is that the Board’s decision to deny her receiving unemployment benefits for misconduct and insubordination was not supported by substantial evidence.
¶ 10. An employee is disqualified from receiving unemployment benefits if he or she is discharged for misconduct. Miss.Code ’ Ann. § 71-5-513(A)(l)(b) (Supp.2014). The Mississippi Supreme Court has defined “misconduct” as:
[C]onduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recur *153 rence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, came within the term.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (citation omitted). Not considered “misconduct” are: “Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion....” Id. Further, “[t]he conduct may be harmful to employer’s interests and justify the employee’s discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton, or equally culpable.” Miss. Emp’t Sec. Comm’n v. Hudson, 157 So.2d 1010, 1014 (¶ 11) (Miss.Ct.App.2000) (citation omitted). For unemployment-compensation cases, “insubordination” is included within the scope of “misconduct.” Shannon Eng’g & Constr., Inc. v. Miss. Emp’t Sec. Comm’n, 549 So.2d 446, 449 (Miss.1989). “Insubordination” is a “constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.” Hudson, 757 So.2d at 1014 (¶ 12) (quoting Shannon, 549 So.2d at 449). “The employer has the burden of showing by ‘substantial, clear, and convincing evidence’ that the former employee’s conduct warrants disqualification from eligibility for benefits.” City of Clarksdale v. Miss. Emp’t Sec. Comm’n, 699 So.2d 578, 580 (¶ 15) (Miss.1997) (quoting Foster v. Miss. Emp’t Sec. Comm’n, 632 So.2d 926, 927 (Miss. 1994)).
¶ 11. The ALJ’s findings of fact include the following:
The claimant’s supervisor instructed the claimant to place the child in a classroom with the correct age group. The claimant did not have room in her classroom. However, another employee agreed to take the child in his class. This same employee later changed his mind and decided not to take the child. The claimant witnessed this employee state he decided not to take the child. However, the claimant informed her supervisor the child had been placed.
The claimant determined she had performed the requested task when her coworker initially agreed to take the child. However, she did not take any action when she discovered the child was not actually placed.
The child had to be placed in the correct classroom by another employee.
The ALJ affirmed the denial of benefits, reasoning: “The employer discharged the claimant for failure to follow instructions given by management. The claimant was instructed to place a child in the correct age group, but failed to do so. However, the claimant informed her supervisor she had performed the requested task.”
¶ 12. Affirming the MDES Board’s decision to deny benefits, the circuit court’s order stated:
It is undisputed that a child was placed in the wrong classroom. Johnson was instructed to place the child in a classroom with the correct age group, but failed to do so. She relies on another worker’s initial acceptance of the child into his room to claim that she resolved the problem or had at least passed it on to someone else. However, this reasoning is undercut by the [ALJj’s finding based on undisputed evidence that Johnson knew the other worker changed his mind and rejected the placement shortly after accepting. The responsibility to place the child as directed remained with Johnson. The [ALJ] found that she never completed the placement. *154 The [ALJ]’s finding that Johnson’s conduct amounted to a disregard of the standard of behavior that an employer has the right to expect is supported by sufficient evidence..
¶ 13. Although the appellate standard of review is deferential to the factual findings of the Board, if the Board “offers an explanation for its decision that runs counter to the evidence before it, the [B]oard’s action is arbitrary and capricious.” Gilbreath, 910 So.2d at 687 (¶ 15). Here, we find the Board’s decision counter to the evidence.
¶ 14. Although in the MDES’s brief, it states Johnson’s discharge was based on several incidents, the ALJ’s decision, which was adopted by the Board, bases its denial of benefits only on the alleged incident of “misconduct” and “insubordination” on September 14, 2012.[3] On that date, Johnson stated that her classrooms were full, and it was Berry’s job as manager to tell her where to place the child. Berry never advised Johnson as to where to place the child. Johnson claimed she did her job in attempting to place the child anyway. The record indicates Johnson made an attempt to place the child with one of her coworkers. Smith initially took the child, but changed his mind, without reason. Smith then asked Nelson to take the child, but Nelson’s classrooms were full. Johnson was no more insubordinate than her other coworkers were, who did not accept the child, one without reason. Further, we fail to see how, as the circuit court’s order states, Johnson was insubordinate because she knew Smith changed his mind about placing the child. No one has explained how Johnson was to have placed the child when her classrooms were full and her coworkers declined to accept the child.
¶ 15. However, Johnson did apparently misrepresent to Berry that the child had been placed after Smith rejected the child. Johnson claims that procedures are such that when Smith assented to taking the child and she handed him her folder, she “was out of it.” This evidence does not arise to a wilful and wanton disregard for the Employer’s interest. Nor do we find Johnson’s conduct during this one incident — the only incident in the record — the equivalent of “a constant or continuing intentional refusal to obey a direct or implied order.” See Hudson, 757 So.2d at 1014 (¶ 12). Accordingly, the Board’s decision is not supported by substantial evidence, and it is necessary for this Court to reverse the Board’s decision and remand this case to the MDES for a computation of unemployment benefits.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Johnson said this Head Start program has over three hundred preschoolers.

. A memo from Nelson to Johnson, dated September 26, 2012, corroborated Johnson’s explanation of the incident on September 14, as did a memo from Jones dated September 25.

. The only other complaint against Johnson in the record, which was also mentioned in the circuit court’s order, was a verbal warning on February 14, 2012, for being rude to a parent, which the parent denied.