ROBERTS, J.,
for the Court.
FACTS
¶ 1. Benny Woods was employed as a bag stacker by Hood Packaging Company (HPC) from June 18, 2001, to December 15, 2004. In April 2004, Woods injured his wrist while working at HPC. Following his injury, Woods visited a physician, Dr. Thomas, and was placed on “light duty” status. After working “light duty” for several weeks and visiting two more doctors, Woods was diagnosed with carpal tunnel syndrome and began therapy for same. At this point HPC informed Woods that no more light duty jobs were available and placed him on medical leave on May 19, 2004. Woods then began receiving workers’ compensation benefits based on short term disability.
¶2. Gerald Garrity, HPC’s Human Resource Manager, testified that it was HPC’s policy that employees on medical leaves of absence keep in touch with HPC on at least a monthly, but preferably weekly, basis to keep it updated on the employee’s condition. Garrity went on to state that Woods knew of this policy from an orientation Woods attended when he began working for HPC, as well as other, similar discussions. In spite of this policy, from June 2004 to December 2004, HPC did not hear from Woods, and on December 15, 2004, HPC was advised by its insurance carrier that Woods would no longer be covered as he failed to follow through with his doctor’s recommended treatment.
¶ 3. Woods’s treatment consisted mostly of physical therapy and injections. When that failed to alleviate Woods’s ailment by an appreciable amount, Dr. Aubrey Lucas suggested surgery that had a 50/50 percent chance at giving Woods any significant improvement, and added that surgery was the only remaining option. Discouraged by the chance of success accompanying the surgery, Woods decided to think about it. There was conflicting testimony concerning whether Woods completed the recommended physical therapy, but no evidence was submitted by either of the parties concerning Woods’s alleged absence. Woods stated he attended every therapy session and was scheduled to go in for additional treatment in December 2004. In any event, as stated supra, HPC’s insurance carrier ceased coverage of Woods on December 15, 2004. Based on that date, the day in which the insurance company stopped Woods’s coverage, Garrity removed Woods from HPC’s payroll and sent Woods a letter notifying him of his discharge. At no point in time after his injury was Woods ever deemed fit for full duty.
¶4. After being discharged by his former employer, Woods filed his initial claim for unemployment benefits under the Mississippi Department of Employment Security (MDES) law on December 19, 2004. The claim was denied on January 20, 2005, as a MDES claims examiner disqualified Woods for benefits pursuant to Mississippi Code Annotated § 71-5-513 A(l)(b) (Rev. 2000), which states, in pertinent part, that an individual shall be disqualified for benefits if discharged for misconduct connected with his work. Woods subsequently filed a notice of appeal, and a telephone hearing was held on March 22, 2005. The MDES appeals referee affirmed the examiner’s decision to disqualify Woods. Woods then filed his notice of appeal from this decision to the Board of Review. On April 21, 2005, the Board of Review affirmed the decision of the referee. Following that decision, Woods appealed to the Circuit Court of Yazoo County. As neither Woods nor the Mississippi Employment Security Commission (MESC) filed a brief with the lower court, Judge Lewis considered only the record on appeal and reversed the *362 decision of the MDES Board of Review. Aggrieved by this, MESC now appeals, raising the following issues which we quote verbatim:
1. Whether the Employer, Hood Packaging Company, proved by substantial evidence that Claimant, Benny Woods, committed disqualifying misconduct pursuant to M.C.A., Section 71-5-513(A)(1)(b) (1972, as amended), by violating the Employer’s policy requiring that he periodically contact the Employer during his medical leave, and by refusing to follow his doctor’s recommended medical treatment?
2. Whether the Board of Review’s decision disqualifying Benny Woods for the reasons stated above was supported by substantial evidence, pursuant to M.C.A. Section 71-5-513(A)(l)(b) (1972, as amended)?
3. Whether the Circuit Court improperly substituted its opinion for that of the Board of Review, and abused its discretion, by finding that Benny Woods’s failure to contact the Employer for five months during his medical leave, and failure to follow recommended medical treatment, did not rise to the level of misconduct?
4. Whether the Circuit Court abused its discretion by reversing the Board of Review’s decision, which found that the Claimant, Benny Woods, committed disqualifying misconduct by refusing to follow recommended medical treatment that should have returned him to full duty work, and by failing to contact the Employer for five months during his medical leave?
STANDARD OF REVIEW
¶ 5. Our standard of review of an administrative agency’s findings and decisions being limited, we can only disturb its conclusions if the agency’s order (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates the claimant’s constitutional rights. Sprouse v. Miss. Employment Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994). There exists a rebuttable presumption that the agency’s decision is correct and the burden of proving otherwise rests with the claimant. Allen v. Miss. Employment Sec. Comm’n, 639 So.2d 904, 906 (Miss.1994) (citing United Cement Co. v. Safe Air for the Env’t, Inc., 558 So.2d 840, 842 (Miss.1990)).
ANALYSIS
¶ 6. We begin by noting that Woods failed to supply this Court with a brief in opposition to the ME SC’s brief. In W.T. Raleigh Co. v. Armstrong, 165 Miss. 380, 140 So. 527 (1932), the supreme court recognized that there is no uniform rule or procedure to guide the reviewing court when an appellee fails to file a brief. When faced with this situation, the supreme court concluded that the two available alternatives were:
(1) When the record is complicated or of large volume, and the case has been thoroughly briefed by appellant with a clear statement of the facts, and with applicable citations of authorities, so that the brief makes out an apparent case of error, we will not regard ourselves as obliged to look to the record or to search through it to find something by which to avoid the force of appellant’s presentation, but will accept appellant’s brief as confessed and will reverse. Or
(2) when the record is in such condition that we can conveniently examine it, and when upon such an examination we can readily perceive a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we will take that course and affirm, thereby *363 to that extent disregarding the default of appellee. But when, taking into view the argument presented by appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirmance, the judgment will be reversed without prejudice.
Armstrong, 140 So. at 527-28. Additionally, this Court has identified that claimants similarly situated as Woods face an up hill climb in their quest for unemployment benefits, and their ability to hire an attorney [1] as a guide up the procedural mountain decreases the longer they go without said benefits. As Judge McMillin stated in Miss. Employment Sec. Comm’n v. Ratcliff, 754 So.2d 595(¶ 8) (Miss.Ct.App.2000),
Because entitlement to unemployment compensation is a benefit that could reasonably be expected to increase in importance to the applicant in inverse proportion to that person’s ability to retain legal counsel to pursue a contested claim through multiple statutorily-mandated reviews, we decline to decide Ratcliffs appeal on a procedural bar and, instead, undertake a review of the record before the Commission to determine whether we agree that the Commission erred.
As the record in this appeal is such that we can conveniently examine it, we will proceed with discussion on the merits of the case in accordance with the applicable standard of review.
I. Was the Board of Review’s findings supported by substantial evidence?
¶ 7. MESC’s first two arguments can be restated as whether there was substantial evidence that Woods failed to call HPC in violation of its policy, and whether Woods failed to follow his doctor’s recommended treatment. HPC’s burden of proof in this regard is clear. At an administrative hearing, the employer carries the burden to prove by substantial, clear, and convincing evidence that the employee committed misconduct. Miss. Employment Sec. Comm’n v. Flanagan, 585 So.2d 783, 785 (Miss.1991). “Substantial evidence” has been defined as evidence “which is relevant and capable of supporting a reasonable conclusion.” Gilbreath v. Miss. Employment Sec. Comm’n, 910 So.2d 682(¶ 13) (Miss.Ct.App.2005) (citing Hooks v. George County, Miss., 748 So.2d 678, 680(¶ 10) (Miss.1999)). “Substantial evidence” is not uncorroborated hearsay. Miss. Employment Sec. Comm’n v. Flanagan, 585 So.2d 783, 785 (Miss.1991).
¶ 8. The record indicates that Woods did not contact HPC from June 2004 to December 2004, because when he did call he was told that they did not have any light duty work available. His reasons for failing to call notwithstanding, this was a violation of HPC’s policy, as detailed in the appeals referee’s findings of fact and adopted by the Board of Review, and we find that substantial evidence exists in the record to support such a finding as Woods admitted to it. The question remains whether or not this can be deemed “misconduct” so as to exclude Woods from his entitlement to unemployment benefits.
¶ 9. Next we turn to the issue of whether there was substantial evidence that Woods “failed to follow up on the doctor’s recommended treatments,” as found by the appeals referee. We cannot answer this in the affirmative. At the hearing Garrity testified that “my understanding is, I don’t know this for sure, but *364 my understanding was at that point that if he did go in for treatments, he never completed it all, if he went at all.”' Garrity claims that he was informed of Woods’s alleged absences from HPC’s insurance carrier. As the only evidence in the record that alleges Woods stopped going to his therapy sessions, Garrity’s testimony is found wanting as he states that he only believes that Woods stopped going but-was not sure, and his testimony at trial amounted to uncorroborated hearsay. In direct contradiction to this testimony, Woods testified that he attended all appointments the insurance company set for him. In addition, the record is devoid of any documentation or other testimony showing that Woods missed even a single appointment. As to evidence of 'Woods’s alleged absence from scheduled treatments, we find that HPC failed to meets its initial burden of proving said absence by substantial, clear and convincing evidence. As Judge Lewis pointed out in her opinion reversing the Board of Review’s decision, “the evidence does not show that Woods discontinued therapy or treatments but simply elected to think about the last option, surgery.”
II. Was Woods’s failure to contact HPC for five months “misconduct?”
¶ 10. MDES’s final two issues center on the question of whether Woods’s actions constituted “misconduct.” Having made our initial finding that the record lacks substantial evidence that Woods failed to attend or complete his therapy appointments, the only remaining action for consideration as misconduct is his failure to call HPC during his leave of absence.
¶ 11. Mississippi Code Annotated § 71-5-513 A(l)(b) (Rev.2000) states that an individual shall be disqualified for benefits if he is discharged for misconduct connected with his work. The supreme court has clarified “misconduct” as used in Mississippi Code Annotated Section 71-5-513 A(l)(b) as “conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.” Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). Furthermore, the Mississippi Employment Security Commission Administrative Manual, Part V, Paragraph 1720, states, “An employee shall not be found guilty of misconduct for violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced.”
¶ 12. There is no question that Woods knew of the policy or that the policy was lawful and reasonably related to the work environment and job performance. The lower court noted as such. There is a question as to whether it was fairly and consistently enforced. Even if Woods’s failure to call HPC for over five months could be considered misconduct as it is defined in Wheeler, which we decline to speak to, the evidence shows that HPC’s policy was not consistently enforced as to Woods. The record shows that HPC’s policy was for any employee who was on a medical leave of absence to call HPC at least once a month, but preferably on a weekly basis, to check in and update HPC on the employee’s current condition. It is obvious from the record that Woods failed to abide by this policy. What is equally obvious from the record is that HPC failed to enforce this policy until they were informed by their insurance carrier that Woods was no longer covered and payment for Woods’s treatments would be terminated. At no time during the five month absence of communication between HPC and Woods did HPC express any concern *365 regarding either Woods’s failure to call or enforcement of its policy. As it is the employer that carries the burden of proof to show by clear, convincing, and substantial evidence that the employee’s actions amounted to misconduct, and an employee shall not be found guilty of misconduct for violation of a rule unless said rule is fairly and consistently applied, HPC carried the burden to show that its policy was fairly and consistently applied. As the record shows, that burden was not met. The only evidence offered by HPC concerning the application of its policy showed that it was not consistently or fairly enforced. As such, Woods’s violation of the policy cannot be deemed “misconduct.” Consequently, the decision of the ME SC was not supported by substantial evidence and cannot stand. We find that MESC’s decision to withhold Woods’s unemployment benefits was not supported by substantial evidence and affirm the Circuit Court of Yazoo County.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS AFFIRMED.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.

. We do note that while it appears Woods is not represented by counsel in the present matter, testimony by Garrity during the phone hearing indicates that he is represented in a related workers' compensation action.