# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-01798-COA

L.C. FISHER                                                                                    APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                                    APPELLEE
EMPLOYMENT SECURITY

DATE OF JUDGMENT:              10/08/2013
TRIAL JUDGE:                          HON. JANNIE M. LEWIS
COURT FROM WHICH APPEALED:   YAZOO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       L. C. FISHER (PRO SE)
ATTORNEYS FOR APPELLEE:       ALBERT B. WHITE
                                      ANNA CRAIN CLEMMER
                                      LEANNE FRANKLIN BRADY
NATURE OF THE CASE:            CIVIL - STATE BOARDS AND AGENCIES
TRIAL COURT DISPOSITION:       AFFIRMED THE MISSISSIPPI
                                      DEPARTMENT OF EMPLOYMENT
                                      SECURITY'S DECISION THAT
                                      APPELLANT/CLAIMANT WAS
                                      DISQUALIFIED FROM RECEIVING
                                      UNEMPLOYMENT BENEFITS ON THE
                                      GROUND OF MISCONDUCT
DISPOSITION:                      AFFIRMED: 10/06/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    L.C. Fisher worked as a security guard for King's Daughters Hospital in Yazoo City,

Mississippi, from January 23, 2012, until his termination on May 28, 2013. Fisher filed a

claim for unemployment benefits with the Mississippi Department of Employment Security

(MDES). MDES found King's Daughters fired Fisher for willful misconduct and denied

Fisher benefits. Fisher now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 26, 2013, an incident occurred when a gunshot victim came into the emergency room around two in the morning. Several people from the nightclub where the victim was wounded came into the emergency room without authorization. Fisher, the only security guard on duty, failed to stop people from entering the emergency room and maintain control.

¶3. At one point, an unidentified man kicked in the emergency-room door to gain access to the victim. One of the nurse supervisors on duty, Jaime Luby, called 911 for police assistance after Fisher failed to respond to his page. The police at the scene eventually restored order, and the incident ended approximately forty-five minutes after starting.

¶4. On May 28, 2013, Fisher's supervisor, Dennis Moulder, called Fisher to his office and fired Fisher for neglecting his duties during the incident. Subsequently, Fisher filed for unemployment benefits from MDES. The claims examiner denied Fisher unemployment benefits, stating that his discharge based on willful misconduct disqualified him from eligibility.

¶5. Fisher appealed the denial. An administrative law judge (ALJ) held a telephonic hearing with Fisher; Moulder, as the employer's representative; and Jimmy Giles, the employer's advocate. After the hearing, the ALJ issued an order that affirmed the denial of Fisher's claim.

¶6. Fisher appealed again to the MDES Board of Review. The Board also affirmed the decision. Fisher then appealed the Board's decision to the Yazoo County Circuit Court. The circuit court found that substantial evidence supported MDES's decision and affirmed the MDES ruling. Fisher now appeals to this Court.

## STANDARD OF REVIEW

¶7. This Court applies an abuse-of-discretion standard of review to an administrative agency's decision. *Mask v. Miss. Dep't of Emp't Sec.*, 80 So. 3d 845, 847 (¶5) (Miss. Ct. App. 2012).

> This [C]ourt's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates a statutory or constitutional right of the complaining party.

*Miss. Dep't of Emp't Sec. v. Good Samaritan Pers. Servs. Inc.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008) (citing *Miss. Comm'n on Envtl. Quality v. Chickasaw Cnty. Bd. of Sup'rs*, 621 So. 2d 1211, 1215 (Miss. 1993)). "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." *Id.* (quoting *Sprouse v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994)).

## ANALYSIS

¶8. Fisher cites no legal authority in the letter brief[1] he submitted to this Court. "The

---

[1] This Court acknowledges that Fisher submitted his brief in letter form in violation of Mississippi Rule of Appellate Procedure 28(a). Regardless, this Court chooses to address

3

Mississippi Supreme Court has held that it is the duty of the appellant to provide authority in support of an assignment of error." *Young v. State*, 919 So. 2d 1047, 1049 (¶5) (Miss. Ct. App. 2005) (citation omitted). "Failure to cite legal authority in support of an issue is a procedural bar on appeal." *Id.* Notwithstanding the procedural bar, we find Fisher's argument is without merit.

¶9. Fisher contends MDES unfairly denied his request for unemployment benefits. In his letter brief, Fisher recounts his version of the May 26, 2013 event without asserting any specific error. MDES argues the substantial evidence supported benefit disqualification based on Fisher's willful misconduct.

¶10. The grounds for disqualification from unemployment benefits is statutory. Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp. 2014) states:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> For the week, or fraction thereof, which immediately follows the day on which he was *discharged for misconduct connected with his work*, if so found by the department, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.

(Emphasis added).

¶11. Courts have defined misconduct in the statute as:

---

the merits of the case.

[C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered "misconduct" within the meaning of the statute.

*Acy v. Miss. Emp't Sec. Comm'n*, 960 So. 2d 592, 594-95 (¶13) (Miss. Ct. App. 2007) (quoting *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982)).

¶12. The evidence presented included King's Daughters' employment policies and surveillance-video footage from the May 26 incident. MDES also considered the testimony of Moulder, Fisher, and Luby.

¶13. "At an administrative hearing, the employer carries the burden to prove by substantial, clear, and convincing evidence that the employee committed misconduct." *Miss. Emp't Sec. Comm'n v. Woods*, 938 So. 2d 359, 363 (¶7) (Miss. Ct. App. 2006) (citation omitted). "'Substantial evidence' has been defined as evidence 'which is relevant and capable of supporting a reasonable conclusion.'" *Id.* (quoting *Gilbreath v. Miss. Emp't Sec. Comm'n*, 910 So. 2d 682, 686 (¶13) (Miss. Ct. App. 2005)).

¶14. According to Moulder's testimony, the video footage of the incident revealed that Fisher failed to make any attempt to assist the victim, lock the emergency-room doors, or restore order. Fisher refuted Moulder's testimony, and claimed he attempted to address the

5

situation and called for police backup himself. However, Fisher failed to offer any witness testimony or documentary evidence in support of his claims.

¶15. Further, Moulder specifically pointed to Fisher on the video footage and showed Fisher allowed several people into the emergency room, stayed in the security booth for several minutes, and did not assist the shooting victim, all contrary to Fisher's testimony. Moulder also testified that Fisher's actions directly violated the employer's procedure for locking down the emergency room when there is a gunshot victim. Though Fisher denied having knowledge of the lock-down procedure for a gunshot victim, he admitted he knew the procedure for locking the doors to prevent too many people from entering the area.

¶16. Additionally, Moulder submitted documentation of Fisher's acknowledgment and receipt of employee handbooks detailing the procedures Fisher failed to follow. The documents show Fisher signed and dated these forms on January 23, 2012, and on March 15, 2013. The specific policies Fisher allegedly violated included the hospital's admission statement requiring security to provide a safe and secure environment, and security protocols requiring security personnel to remove unruly persons from the premises.

¶17. Fisher counters that King's Daughters failed to follow its own disciplinary procedure by firing him without any warning. The disciplinary policy, however, states: "[A]ctions will result in one or some of the following: (1) [o]ral warning, (2) [w]ritten warning, (3) [d]isciplinary suspension of a specified number of days, [or] (4) [d]ischarge." Thus, discharge is only one of the possible punishments outlined in the policy. Further, at the

6

hearing, Fisher testified he knew of the procedure for review of his discharge, but admitted he did not attempt to file any grievance.

¶18. Therefore, based on the evidence presented, the ALJ found the substantial evidence proved Fisher knew of the proper policies, failed to follow these policies, and acted carelessly and negligently. The ALJ concluded Fisher's actions met the definition of misconduct to disqualify him from benefits. We agree. The evidence showed Fisher acted with willful and wanton disregard for the procedures and policies illustrated by Moulder's testimony and the documentary evidence. Therefore, this issue is without merit.

¶19. **THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT IS AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**