# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00804-COA

**BEDFORD CARE CENTER OF MARION, LLC**                    **APPELLANT**

**v.**

**CENITHER NICHOLSON**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBIN L. ROBERTS |
| ATTORNEY FOR APPELLEE: | CENTHER NICHOLSON (PRO SE) |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | REVERSED DECISION OF THE BOARD OF REVIEW OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY, FINDING THAT APPELLEE WAS DISQUALIFIED FROM RECEIVING UNEMPLOYMENT BENEFITS |
| DISPOSITION: | AFFIRMED - 01/24/17 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     The Mississippi Department of Employment Security's Board of Review (Board) affirmed the denial of unemployment benefits following Cenither Nicholson's termination from Bedford Care Center of Marion LLC (Bedford Care). The Circuit Court of Marion County reversed the denial of benefits, finding that Nicholson did not, when applying for the Bedford Care job, intentionally misrepresent whether she had ever previously filed a workers' compensation claim or been injured on the job. We affirm the circuit court's

judgment.

## FACTS AND PROCEEDINGS BELOW

¶2.     In 2008, while working as certified nursing assistant (CNA) at East Mississippi State Hospital (EMSH), Nicholson pulled a muscle in her back while helping a patient who had fallen onto the floor.[1] The Hospital paid for Nicholson's emergency-room visit and she missed two or three days of work. In September 2012, Bedford Care hired Nicholson as a CNA. As part of the post-offer hiring process, Nicholson filled out a questionnaire asking if she had ever been injured on the job or filed a workers' compensation claim. She answered no to these questions. Some months later, a routine audit of personnel files revealed the previous workers' compensation claim on her behalf related to her emergency-room visit while employed at EMSH. Nicholson was terminated from Bedford Care in May 2013 for the sole reason that she falsified information on her employment application.

¶3.     Nicholson filed an unemployment claim, which was denied on the basis that Nicholson was discharged for misconduct connected with her employment and was therefore disqualified from receiving benefits. Nicholson appealed the denial of her claim. An administrative-law judge (ALJ) conducted a telephonic hearing. At the hearing, concerning the questions related to whether she had ever filed a workers' compensation claim, Nicholson testified: "I thought they was talkin' about like a paycheck, money from Workman's Comp. I, I didn't know that like when they send you to the doctor, when you get hurt, that's the same

---

[1] "EMSH is a 'state psychiatric hospital and institution,' established in 1882." *Ivy v. E. Miss. State Hosp.*, 191 So. 3d 120, 121 n.1 (Miss. 2016) (quoting Miss. Code Ann. § 41-17-3 (Rev. 2013)).

as Workman's Comp. When you go to the emergency room. I didn't know that."

¶4.    She further testified that she understood the question about whether she had ever been injured on the job to refer to a serious injury that prevented her from working, and that it did not occur to her to report the incident of the pulled back muscle because it did not prevent her from working. She also testified that it blended in with other memories of her experience working at EMSH where she worked "on a unit where they fight a lot and we had to break up a lot of fights and sometimes you get scratched up or you might get knocked down or somethin' like that."

¶5.    The Bedford Care administrator who fired Nicholson testified that receiving accurate information related to past injuries was relevant to determining an applicant's physical ability to perform the job of nursing assistant. The application and the company's employee-policy handbook stated that providing false information on the application was grounds for termination.

¶6.    The ALJ ultimately determined that Nicholson was disqualified from receiving benefits, stating "[t]he application asked four specific questions related to prior injuries and workers' compensation claims. The claimant responded in the negative to all[,] which would indicate a willful or intentional falsification of information." Nicholson appealed the ALJ's decision to the Board. The Board affirmed the decision of the ALJ.

¶7.    Nicholson then appealed the Board's affirmance of the ALJ to the Circuit Court of Lauderdale County. The circuit court, sitting as an intermediate appellate court, reversed the Board, stating:

> [Nicholson's] testimony demonstrates that she neither understood the questions being asked on the [employment application,] nor did she intentionally provide false information; therefore, she did not intentionally provide false information during the hiring process.

In particular, the circuit court referenced Nicholson's testimony that she did not receive any money, that she "didn't know that going to the doctor was the same thing as Workman's Compensation," and that she thought that the questions about whether she had ever been injured on the job were referencing a serious injury that would prevent her from working.

¶8. Bedford Care appeals.

## DISCUSSION

¶9. Our review of an administrative agency's findings and decisions is limited, and an agency's conclusions will remain undisturbed unless the agency's decision (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of power granted to the agency, or (4) violates the claimant's constitutional rights. *Miss. Emp't Sec. Comm'n v. Ratcliff*, 754 So. 2d 595, 597 (¶9) (Miss. Ct. App. 2000). Appeals from the Board are governed by Mississippi Code Annotated section 71-5-531 (Rev. 2011), which provides:

> In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

"[A]n order of the Board . . . on the facts is conclusive upon the lower court, if supported by substantial evidence and in the absence of fraud, and the scope of review requires the determination of the sufficiency of the evidentiary basis of the decision." *Wheeler v. Arriola*,

4

408 So. 2d 1381, 1384 (Miss. 1982).

¶10.   "In misconduct cases, the employer bears the burden to prove by substantial, clear, and convincing evidence that a former employee's conduct warrants disqualification of benefits." *Over the Rainbow Daycare v. Miss. Dep't of Emp't Sec.*, 188 So. 3d 1249, 1251 (¶7) (Miss. Ct. App. 2016). Disqualifying misconduct is "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." *Wheeler*, 408 So. 2d at 1382. However, an employee's conduct may harm the employer's interests and justify discharge from employment, yet not rise to the level of willful or wanton so as to invoke disqualification for unemployment-insurance benefits. *Acy v. Miss. Emp't Sec. Comm'n*, 960 So. 2d 592, 595 (¶14) (Miss. Ct. App. 2007).

¶11.   Falsification of an employment application can be grounds for disqualification of benefits. *Ratcliff*, 754 So. 2d at 598 (¶14). In *Ratcliff*, this Court affirmed the Board's[2] denial of unemployment benefits to a claimant who failed to disclose that her most recent employer was Walmart when filling out a Target application that requested the applicant to list previous employment. *Id*. at 596 (¶3). The employee in *Ratcliff* did not misunderstand the question on the application, but rather made her own decision that an accurate answer was not relevant. *Id*. at 598 (¶17). In agreeing with the Board's conclusion that Ratcliff's conduct disqualified her for unemployment benefits, we rejected Ratcliff's argument that "she did not intend to deceive Target but was only doing what she thought would best inform Target of

_____

        [2] At that time, the agency was known by its former name, the Mississippi Employment Security Commission.

her relevant work experience within the limits of the available space on the application." *Id*. at 596 (¶3). The circuit court had reversed the Board's denial of Ratcliff's benefits, finding that she had offered a "plausible explanation" for omitting her prior employment at Walmart. *Id*. at 597-98 (¶14). In reversing the circuit court, we stated that the "plausible explanation" was "an improper focus of the court's attention" and that the relevance of the applicant's immediately previous work experience was for the employer to determine. *Id*.

¶12. Here, Nicholson did not understand the application questions about workers' compensation to be related to her emergency-room visit and injury from several years previously. Her testimony at the hearing supports that she understood filing a workers' compensation claim to involve receiving a paycheck substitute for inability to come to work, and that she did not understand her employer's payment for the emergency-room visit to be within the concept of workers' compensation. This misunderstanding falls short of willful and wanton misconduct that would disqualify her from receiving unemployment-insurance benefits.

¶13. While Bedford Care has a legitimate interest in ascertaining the physical ability of prospective CNAs to perform their jobs, Nicholson's conduct in providing an inaccurate answer on her application must have been willfully and wantonly against Bedford Care's interests in order to disqualify her from receiving unemployment benefits. Violation of company policy can warrant employment termination without, at the same time, constituting "misconduct" for purposes of disqualifying the employee from benefits. *Miss. Emp't Sec. Comm'n v. Woods*, 938 So. 2d 359, 365 (¶12) (Miss. Ct. App. 2006) (claimant's failure to

6

contact employer for five months while on medical leave, in violation of company policy, did not constitute misconduct). Even if Nicholson's inaccurate answers on her application warranted her dismissal as a violation of company policy, they do not rise to the level of "willful" or "wanton" so as to warrant disqualification of unemployment-insurance benefits. We therefore affirm the circuit court's reversal of the Board.

## CONCLUSION

¶14. We agree with the circuit court that substantial evidence was not presented below to support that Nicholson acted in such willful or wanton disregard of her employer's interest that disqualification of unemployment benefits is warranted. We therefore affirm the circuit court's reversal of the Board's denial of benefits.

¶15. **THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND WILSON, JJ., CONCUR. FAIR AND WESTBROOKS, JJ., NOT PARTICIPATING.**