# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CC-00152-COA

**ANIMAL RESCUE FUND OF MISSISSIPPI**                    **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                            **APPELLEES**
**EMPLOYMENT SECURITY AND DONNY**
**MOORE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/02/2024 |
| TRIAL JUDGE: | HON. JESS H. DICKINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | KEITH W. TURNER<br>ADRIA LYN JOHNSON |
| ATTORNEYS FOR APPELLEES: | ALBERT B. WHITE<br>ANNA CRAIN CLEMMER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/18/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Donny Moore's employment at the Animal Rescue Fund of Mississippi (ARF) ended, and he subsequently filed a claim for unemployment benefits. A claims examiner with the Mississippi Department of Employment Security (MDES) conducted an investigation and found that Moore voluntarily left his employment. As a result, Moore was disqualified from receiving unemployment benefits.

¶2.     Moore appealed the claims examiner's decision to an MDES administrative law judge (ALJ). After a hearing, the ALJ found that Moore did not voluntarily leave his employment

but, instead, was discharged due to medical reasons beyond his control. The ALJ accordingly held that Moore was entitled to unemployment benefits.

¶3. ARF appealed the ALJ's decision to the MDES Board of Review, which adopted the ALJ's opinion and affirmed the ALJ's decision. ARF next appealed to the Hinds County Circuit Court. The circuit court affirmed the Board of Review's decision.

¶4. ARF now appeals and argues that the Board of Review's decision was arbitrary and capricious and not supported by substantial evidence. After our review, we find no reversible error. We therefore affirm the circuit court's judgment.

**FACTS**

¶5. From October 2009 through December 2012, Donny Moore was employed by ARF, most recently as a shelter manager. On December 3, 2012, Moore filed for unemployment benefits. On his claim-for-benefits form, Moore indicated that he was laid off from his employment at ARF.

¶6. A claims examiner from MDES conducted an investigation. As part of the investigation, the claims examiner interviewed Moore and ARF Board of Directors member Charles Jackson. Charles informed the claims examiner that due to Moore's recurring health issues, Moore was placed on a medical leave of absence in December 2012. According to Charles, Moore was advised to report back to ARF on January 2, 2013, to "reassess his health situation." However, Moore never returned.

¶7. Moore disputed Charles's version of events, stating that he was never placed on leave or advised to report back to work on a certain date. Moore maintained that he did not quit

his job; rather, he was discharged due to health issues that were beyond his control. Moore explained that he had requested to take an afternoon off work to go see his doctor and get his prescriptions refilled, but his employer "got upset" and terminated Moore's employment. Moore asserted that Elizabeth Jackson, the executive director of ARF, advised him that "he was being let go."

¶8. The claims examiner issued a decision finding that Moore voluntarily left work when he failed to return after his leave of absence ended. The claims examiner accordingly held that Moore was disqualified from receiving unemployment benefits because "[Moore] has not shown good cause under the Mississippi Employment Security law for voluntarily leaving employment."

¶9. Moore appealed the claims examiner's decision to the ALJ. The ALJ conducted a telephonic hearing and heard testimony from Moore, Charles, and Elizabeth.

¶10. Moore testified that on December 2, 2012, Elizabeth told him that due to his recurring health issues, Moore needed to go home. Elizabeth advised Moore that they could talk again in "a month or two." Moore testified that his wife was present during the conversation with Elizabeth, and his wife asked if Moore could work part time. According to Moore, Elizabeth responded, "No. He needs to go home." Moore explained to the ALJ that a few weeks before this conversation, he had requested to take a day or two off work to go to the doctor and get his prescriptions refilled. Moore had also recently been diagnosed with the flu.

¶11. Moore maintained that he did not quit his employment, nor did he have any intentions of quitting. Moore explained that ARF had set up an apartment for him near the shelter and

3

had offered to give him money to fix his personal vehicle, which he also used for shelter business. Moore described his employment arrangement as "a dream." Moore testified that if Elizabeth had provided him with a date and time to return to work, he would have returned. Moore reiterated that he did not request a leave absence, explaining that "[a]ll [he] needed was a day off just to go visit the doctor and get [his] prescription refilled."

¶12.    Charles and Elizabeth both testified that Moore was placed on a leave of absence in December 2012 based on his recurring health issues. Charles recalled that in October 2012, Moore informed his employers that he needed to have a procedure performed on his heart in December and that he would need to take time off work. However, Charles admitted that Moore never actually requested a leave of absence.

¶13.    Charles also testified that Moore's health had increasingly deteriorated, explaining that Moore would suffer "spells" at work and need to go to the emergency room, even as recently as December 1, 2012. Charles stated that when Moore returned to work after his December 1, 2012 medical issue, Elizabeth called Moore into her office and told Moore that "she just felt it was better to . . . give him a leave of absence." According to Charles, Elizabeth advised Moore "to go home, get himself straightened out," take care of his health, undergo his medical procedure, and then come back around the first of the year, and they would "reassess what his situation was." Charles testified that despite this conversation, Moore never returned to ARF.

¶14.    When the ALJ asked if anyone from ARF tried calling Moore, Charles answered, "No," and he stated that he did not have Moore's phone number. Charles added that he did

4

not feel that it was his place to call Moore because Moore "was told what the deal was" regarding returning to work.

¶15. Elizabeth, the executive director of ARF, testified that in October 2012, she and Moore had a conversation about moving the shelter to its new location. At that time, Moore mentioned to Elizabeth that he would need to take time off work in December to undergo a heart stent procedure. Elizabeth stated that Moore had recurring health issues that resulted in him going to the emergency room. Elizabeth testified that on December 1, 2012, Moore had "fallen out" at work again and went to the emergency room. When Moore returned to work the next day, Elizabeth met with him and told Moore that he needed to take time off work to go to the doctor and undergo his heart stent procedure. Elizabeth stated that she instructed Moore to come back on January 1, 2013, and they would assess his health. Elizabeth testified that she told Moore if he needed to take it slow in returning to work, she would "figure out something" for him. Elizabeth testified that Moore never returned to work. Elizabeth stated that if Moore had returned to work, and if his health permitted it, she would have had work available for him.

¶16. When the ALJ asked Elizabeth if Moore had ever requested a leave of absence, Elizabeth referenced her October 2012 conversation with Moore and stated that she "assumed that was him requesting time off in December" to undergo his procedure. Elizabeth testified that after Moore had another spell on December 1, 2012, she "thought it was time for him to go on and get [the procedure] done."

¶17. Moore responded that he did not remember having a conversation with Elizabeth in

October 2012 about his heart stent procedure. He maintained that he only told her that he needed to go to the doctor for a checkup to get his prescription refilled. Moore told the ALJ that he never underwent a stent procedure in December 2012.

¶18.    After hearing testimony, the ALJ entered an order reversing the decision of the claims examiner and awarding unemployment benefits to Moore. The ALJ determined that Moore was not discharged from his employment for misconduct but, rather, due to medical reasons beyond his control. The ALJ accordingly found that ARF failed to meet its burden of showing that Moore was discharged due to misconduct pursuant to Mississippi Code Annotated section 71-5-513(A)(1)(c) (Rev. 2021). The ALJ summarized the testimony from the hearing as follows:

> In October 2012, [Moore] was informed by his physician that he needed to have heart surgery. [Moore] casually informed the employer of what his doctors said after his appointment. [Moore] was then told by his supervisor to take off work until January 2013, in order to get his health back in order. [Moore] did not report back to work for the employer in January 2013, because he was informed the employer would get back with him. [Moore] felt as though he could continue to work when his supervisor told him to take off work. He had no intentions of leaving work.

¶19.    ARF appealed the ALJ's decision to the Board of Review. The Board of Review entered an order adopting the ALJ's findings and opinion and affirming the ALJ's decision.

¶20.    ARF next appealed to the circuit court. Upon request by MDES, the circuit court remanded the case to the Board of Review for reconsideration. The circuit court explained that Moore had made conflicting statements to MDES in another investigation regarding his separation from ARF, and remand was necessary so that these statements could be made part of the record and considered by the Board of Review. The Board of Review then issued an

6

order of remand directing the ALJ to take additional testimony from Moore regarding his responses made during MDES's non-monetary investigation into Moore's leave of absence, including who approved the leave of absence, the date Moore's leave of absence began, and the date he was scheduled to return back to work.

¶21. The ALJ then held a second telephonic hearing. During the hearing, the ALJ heard additional testimony from Moore and Elizabeth. The ALJ also admitted several documents from MDES into evidence, including MDES's notice of non-monetary determination decision finding that because Moore had failed to show good cause for voluntarily leaving work, he was disqualified from receiving unemployment insurance benefits.

¶22. Moore testified that he told the MDES investigator that Elizabeth instructed him to go home and return to work "in a month or so." Moore explained that he did not provide the MDES investigator with an expected date to return to work because Elizabeth never specified a date for him to return. Moore added that Elizabeth took back his keys to the shelter and his work phone. Moore stated that after he received his last paycheck, he never heard from anyone at ARF.

¶23. Moore also testified that Elizabeth never asked him for any type of medical records or documents before his employment ended. Moore stated that he never requested a leave of absence and that he never filled out any paperwork for a leave of absence. Moore also testified that he did not request any type of medical leave; rather, he only requested "a day or two" off of work so that he could get his prescriptions refilled.

¶24. Elizabeth agreed that Moore never filled out any paperwork for a leave of absence.

7

However, she testified that Moore did verbally request a leave of absence, referring to her conversation with Moore in October 2012 when Moore stated that his doctor told him that he would need a stent placed in his heart. Elizabeth testified that Moore stated he would need to take time off work in December for the procedure. Elizabeth stated that when Moore filed his claim for unemployment benefits, she disputed his claim. Elizabeth maintained Moore was on a leave of absence for his health, but he never returned.

¶25. Elizabeth also testified that after Moore returned to work from his December 1, 2012 medical issue, she talked to Moore about his recurring health issues. Elizabeth explained that she told Moore his health "[was] declining faster and faster and that he needed to go on and get his heart situation taken care of" and "[she] needed him to take the time off to get all the way healed so that he doesn't keep falling out." Elizabeth testified that she instructed Moore to "go to the doctor, get his heart taken care of, take about a month off, come back to [the shelter] at the [first] of the month with what his doctor said[.]" Elizabeth told Moore that when he returned, she "would see what kind of position we could put him in to where it would be less stressful on him[.]"

¶26. After taking the entire record into consideration, the Board of Review again affirmed the decision of the ALJ awarding unemployment benefits to Moore. ARF appealed to the circuit court.[1] ARF also filed a motion for summary judgment arguing that the Board of

---

[1] ARF filed its appeal to the circuit court on June 19, 2014. No further action was taken until May 2021. On May 11, 2021, the circuit court clerk filed a notice pursuant to Mississippi Rule of Civil Procedure 41(d), stating that the case "will be dismissed for want of prosecution, unless within thirty days following [this notice], action of record is taken[.]" ARF then filed its motion for summary judgment on May 28, 2021. In its motion, ARF acknowledged its delay in filing a motion for summary judgment and asserted that the delay

8

Review's decision was not supported by substantial evidence and that the Board of Review arbitrarily and capriciously based its decision on Moore's testimony alone, despite significant evidence contradicting Moore's testimony.

¶27. On January 2, 2024, the circuit court entered a judgment finding that the Board of Review's decision was supported by substantial evidence, was not arbitrary and capricious, was not beyond the scope of authority granted to the agency, and did not violate any constitutional right of the appealing party. The circuit court therefore affirmed the Board of Review's decision and denied ARF's motion for summary judgment.

¶28. ARF now appeals from the circuit court's judgment.

## STANDARD OF REVIEW

¶29. "Our review of an administrative agency's findings and decisions is limited[.]" *Bedford Care Ctr. of Marion LLC v. Nicholson*, 218 So. 3d 1176, 1178 (¶9) (Miss. Ct. App. 2017). We recognize that "a rebuttable presumption exists in favor of the administrative agency[,]" and ARF "has the burden of proving otherwise." *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp. Sec. Comm'n*, 129 So. 3d 178, 183 (¶13) (Miss. 2013).

¶30. Section 71-5-531, which governs appeals from the Board of Review, provides: "In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Supp. 2023). Therefore, the Board of Review's conclusions "will remain undisturbed unless the

was excusable, explaining that at the time the appeal was filed, ARF's attorney and MDES's attorney were in the process of changing jobs.

9

agency's decision (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of power granted to the agency, or (4) violates the claimant's constitutional rights." *Bedford Care Ctr.*, 218 So. 3d at 1178 (¶9). When reviewing the Board of Review's factual findings, "[we] must not reweigh the facts of the case or insert [our] judgment for that of the agency." *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994).

¶31. When reviewing a circuit court's decision to affirm an administrative agency's findings and decision, as in the case before us, "the appropriate standard of review is abuse of discretion." *Vector Transp. Co. v. Miss. Dep't of Emp. Sec.*, 350 So. 3d 289, 293 (¶9) (Miss. Ct. App. 2022) (quoting *McGee v. Miss. Emp. Sec. Comm'n*, 876 So. 2d 425, 427 (¶5) (Miss. Ct. App. 2004)).

## DISCUSSION

¶32. ARF appeals from the circuit court's judgment affirming the Board of Review's decision that Moore was entitled to unemployment benefits because Moore was discharged from his employment for medical reasons beyond his control. ARF argues that the Board of Review's decision is arbitrary and capricious and not supported by substantial evidence. In support of its argument, ARF asserts that the Board of Review improperly based its decision on Moore's testimony alone. ARF further claims that Moore's testimony failed to disprove MDES's original finding that Moore was not discharged but instead voluntarily abandoned his employment by failing to return. Because "a rebuttable presumption exists in favor of the administrative agency, [ARF] faces an uphill battle." *Columbus Light & Water Dep't v.*

10

*Miss. Dep't of Emp. Sec.*, 281 So. 3d 920, 924 (¶14) (Miss. Ct. App. 2019); *see also Franklin Collection Serv. Inc. v. Miss. Dep't of Emp. Sec.*, 181 So. 3d 304, 307 (¶13) (Miss. Ct. App. 2015).

¶33.    Moore argues that he was discharged from his employment due to medical reasons beyond his control.  When an employee leaves work *involuntarily*, through no fault of his own, "[u]nemployment benefits are available[.]" *Patterson v. Miss. Dep't of Emp. Sec.*, 316 So. 3d 203, 206 (¶11) (Miss. Ct. App. 2021).  However, when an employee leaves his work *voluntarily* without good cause, he is disqualified from receiving unemployment benefits. Miss. Code Ann. § 71-5-513(A)(1)(a).  "The question of whether an employee voluntarily leaves his employment or is terminated is a question of fact to be determined by the MDES." *Waldrup v. Miss. Emp. Sec. Comm'n*, 951 So. 2d 597, 599 (¶9) (Miss. Ct. App. 2007) (citing *Huckabee v. Miss. Emp. Sec. Comm'n*, 735 So. 2d 390, 394 (¶14) (Miss. 1999)).

¶34.    Here, the Board of Review adopted the ALJ's findings that Moore was discharged from his employment due to medical reasons beyond Moore's control, and therefore Moore was entitled to unemployment benefits.[2]  After reviewing the record and keeping in mind our limited standard of review, we find the Board of Review's finding was not arbitrary or capricious.  We also find that "the Board [of Review] supported its decision with substantial evidence in the form of [Moore's] testimony." *Columbus Light & Water Dep't*,  281 So. 3d at 925 (¶16).  As discussed above, Moore testified that he never requested a medical leave

---

[2] The ALJ and Board of Review also found that ARF "has not shown that [Moore] was discharged due to misconduct as that term is defined in the law."  However, ARF does not argue that Moore was discharged from his employment based on misconduct; rather, ARF maintains that Moore voluntarily left his work without good cause.

of absence; rather, "[a]ll [he] needed was a day off just to go visit the doctor and get [his] prescription refilled." However, Moore testified that Elizabeth told him that due to his health issues, Moore needed to go home. Elizabeth also testified before the ALJ that after Moore had another spell on December 1, 2012, she "thought it was time for him to go on and get [the procedure] done." Although Elizabeth advised Moore that they could talk again in approximately a month, Moore testified that Elizabeth never provided him with a date to return to work. Moore also testified that Elizabeth also took back his keys to the shelter and his work phone. Moore maintained that he did not quit his employment, nor did he have any intentions of quitting. *See Huckabee*, 735 So. 2d at 397 (¶25) ("[A]n employee who leaves work under the belief that [he] has been fired has not voluntarily terminated [his] employment where that belief is reasonable under the circumstances.").

¶35.    As stated, "the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive[.]" Miss. Code Ann. § 71-5-531. "[E]ven if there is evidence which would have supported a different result, we will not disturb a decision of the Board that is supported by substantial evidence." *Columbus Light & Water Dep't*, 281 So. 3d at 925 (¶15) (quoting *Franklin Collection Serv.*, 181 So. 3d at 309 (¶18)). Because we find that the Board of Review's decision is supported by substantial evidence, we find that the circuit court did not abuse its discretion in affirming it. Accordingly, we affirm the circuit court's judgment.

¶36.    **AFFIRMED.**

        **BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN**

**PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**